### In re HOLDEN.

### (District Court, N. D. New York. July 12, 1919.)

1. BANKRUPTCY ⚖132—REMOVAL OF TRUSTEE—GROUNDS.

   That the trustee of a bankrupt, appointed by a large majority of creditors, had previously acted for the bankrupt and his wife, who conveyed to him all of their property in trust for themselves and creditors, *held* not ground for his removal, where he executed the trust efficiently and in good faith, and made payments only by direction or with the approval of bankrupt.

2. BANKRUPTCY ⚖132—TRUSTEE—POWER OF REMOVAL.

   Under General Order in Bankruptcy No. 13 (89 Fed. vii, 32 C. C. A. xvii), a referee is without power to remove a trustee, who is removable by the judge only.

In Bankruptcy. In the matter of James A. Holden, bankrupt. On petition of a creditor to review an order of the referee refusing to remove the trustee, who was selected by about 90 per cent. of the creditors. Affirmed.

Henry W. Williams, of Glens Falls, N. Y., for petitioner.
E. M. Angell, of Glens Falls, N. Y., for trustee.

RAY, District Judge. [1] A. Eugene Mason was appointed trustee of the bankrupt September 8, 1917, on petition filed August 18, 1917. He was the vice president and cashier of the Glens Falls Trust Company, a creditor of the bankrupt. December 31, 1914, an agreement in writing was entered into between the now bankrupt James

A. Holden and Mary B. Holden, of the first part, and said A. Eugene Mason, of the second part, wherein it is recited that the parties of the first part had theretofore executed conveyances, subject to certain mortgages, of all their real and personal property to said Mason the party of the second part and also certain securities held by them. The agreement then provides that Mason will hold and use all the said property for the benefit of the parties of the first part and sell, convey, and dispose of same for their best interests after consulting and conferring with the parties of the first part; that he will place same or parts of same as collateral to the debts and obligations of the parties of the first part which are most pressing and keep a true account and account to the first parties—

"for the purpose of paying the obligations of the said parties of the first part and to pay obligations of the said parties of the first part as fast as possible, and to pay taxes and insurance and to pay all expenses in connection with the said property, and to use the property and securities for the purpose of meeting the debts and obligations of the parties of the first part to the full extent that such property and securities may be applicable, and to reconvey and reassign after three years from the date hereof, upon thirty days' demand in writing signed by the parties of the first part, such property, or so much thereof as may remain undisposed of, to said parties of the first part unless the debts and obligations of said parties of the first part shall sooner be paid or reduced to a negligible amount."

The parties of the first part further agreed not to make any promissory notes, and also agreed that said James A. Holden would pay over to Mason one-half the salary he was receiving from the state of New York, to be applied to his debts and to the upkeep and management of the real estate so conveyed to Mason. The agreement also contained the following:

"3. It is further expressly agreed and understood that the party of the second part shall be privileged to apply the proceeds of the said property conveyed to him for the purpose of maintaining and caring for said property in all respects and for his expenses and a reasonable compensation to him *for carrying out the provisions of this trust.* The party of the second part shall have the right and privilege at any time to reconvey to said parties of the first part any of the real property heretofore conveyed to him by the parties of the first part or so much thereof as shall be then remaining and reassign to said parties of the first part such securities as he may have, covered by this agreement, then in his hands, and pay over any moneys belonging to said parties of the first part that shall then be in his possession and terminate this agreement and his responsibility thereunder. The said party of the second part shall not be liable in any way for any mistake in judgment *in the execution of this trust* and shall be liable only for bad faith."

January 2, 1915, James A. Holden had given to said Mason a power of attorney reading as follows:

"Know all men by these presents, That I, James A. Holden, of the city of Glens Falls, Warren County, New York, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, A. Eugene Mason, of the same place, my true and lawful attorney for myself and in my name, place, and stead to execute and deliver any promissory notes or renewals thereof, to sign any papers necessary in the transfer of certificates of stock, bonds, or securities of any nature upon the books of any corporation or transfer agent, and to sign and execute any papers and do any and all acts, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be

258 F.—46

done in and about the premises, as fully to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue thereof.

"In witness whereof, I have hereunto set my hand and seal the second day of January, one thousand nine hundred and fifteen.

"James A. Holden.   [Seal.]"

Objection was made to Mason's appointment, and then a motion was made to and before the referee to remove him, and hearings were had, and March 8, 1919, the application to remove the trustee was denied.

The petition to review that order was made and filed March 17, 1919. Mr. Mason managed these properties and conducted the affairs of the bankrupt under this agreement down to the time of such bankruptcy, exercising also his powers under the power of attorney. The referee in his return states that Mr. Mason down to the time of the bankruptcy believed Holden to be solvent and that Holden from time to time turned over one-half of his salary. Mr. Mason has filed a statement of all his transactions while so acting. He paid all he could while so acting for Holden.

The referee also certifies that the Glens Falls Trust Company "received only what was realized from the collateral which it held at the time of the making of the agreement." It appears that while acting under this trust agreement Mr. Mason paid some of Holden's debts in full, made small payments on others, but made no payment at all on others. It is contended that under the agreement it was the duty of Mr. Mason to pay Holden's creditors pro rata and that he is liable to the estate in bankruptcy—that is, to Holden's estate—because he did not, or to the creditors to whom he paid nothing. During his lifetime (he having died since his bankruptcy) Mr. Holden carried certain life insurance on which premiums were paid by Mr. Mason from time to time. These policies, except one, had been assigned by him as collateral security for certain of his indebtedness. All payments were made at the request and with the consent and approval of Mr. Holden. It seems that as a general rule, notwithstanding the agreement, Mr. Holden dictated what payments should be made and to whom. But I find nothing in the agreement that makes Mr. Mason a wrongdoer in pursuing this course. This was not either a general assignment for the benefit of creditors, or an assignment made for the benefit of creditors. It created a trust clearly, but did not purport to create a trust for the benefit of creditors, although the assignment was undoubtedly intended to be in the interest of creditors as well as of Holden. It was not intended to hinder, or delay, or defeat, or defraud creditors. Under some conditions and circumstances it might have defrauded creditors. If a creditor had brought suit and obtained judgment, he would have been delayed in its collection, as the title to all of Holden's property had been transferred to Mason, and proceedings other than the issue of an execution and a levy and sale thereunder would have been necessary.

But no suits were brought and no executions were issued. When bankruptcy came, Mason fully accounted, so far as appears, and

turned over all the property remaining. Acting for the real owner, Holden, he, so far as appears, acted according to his directions or with his consent and approval. Clearly Holden had no cause of action against Mason for any of his acts under the agreement. It is not contended that Mason has kept anything back, that he has been guilty of any concealment, or that he has appropriated any of the property to his own use. If any of his acts concerning or done in dealing with this property prior to the bankruptcy were in fraud of creditors, or of any creditor, or worked any injury to a particular creditor, or to particular creditors, such acts were done by him in his individual character and capacity, and he may be sued by such creditor or creditors; but the cause of action is not against him as trustee, nor is it one in favor of the estate in bankruptcy. If any preferences were given within the four months preceding the bankruptcy, Mason may sue to recover them; but no case of this kind is presented. Suit in such case can be brought in his name as trustee, and creditors desiring the suit brought can prosecute it by their own attorney, and this court would so order. However, the record presents no such case or condition.

The appointment of Mr. Mason as trustee was objected to, but made and confirmed, and there was no appeal or review. There is no claim that Mr. Mason is not a competent and able man, or that he is unfit for the position. It is not asserted that he has done anything since his appointment to justify removal, or that he has failed in the discharge of any duty he owes to creditors or the estate he represents.

[2] But, irrespective of all this, General Order 13 (89 Fed. vii, 32 C. C. A. xvii), established by the Supreme Court, provides:

"The appointment of a trustee by the creditors shall be subject to be approved or disapproved by the referee, or by the judge; *and he shall be removable by the judge only.*"

In view of this General Order the referee was powerless to remove this trustee, and the order refusing to remove him must be affirmed. However, if cause for removal can be shown, the matter should be brought before the judge on petition, and an order to show cause will be granted, and the whole situation gone into. The record now before the court does not show cause for a drastic order of removal, even if the appointment in the first instance was unwise in view of the situation.